3-7-10-4-1-7 People of the State of Illinois Act Leave by Justin Manfelosi v. John E. Sims, held by Mark Fishman Mr. Fishman Good morning, Your Honors. May it please the Court, Counsel, Mark Fishman from the Appellate Defender's Office, representing the defendant in this case, John E. Sims. Mr. Fishman, before you get started, just a motion. Thank you, Your Honor, and I was going to make a brief reference, but thank you for telling me that. Sure. Mr. Sims was convicted in a jury trial of unlawful possession of a weapon by a felon. Specifically, in a jury trial filed on October 26, 2015, that Mr. Sims possessed a handgun in an automobile, and that he had a pre-trial felony conviction. He was sentenced to return seven years in prison. Now, four issues were originally raised on appeal. Mr. Warner, Justice Wilson, I would like to thank you again. Just over a week ago, I filed a motion to withdraw Issue 1, which agrees with reason without argument. I do want to apologize to the Court for not taking any consideration to that issue prior to this date. And, of course, I also want to apologize to Mr. Pelosi, because he had to spend time responding to that issue in the State Supreme Court. Issue number one, having been withdrawn, that still leaves three arguments raised in the briefs, all of which respectfully ask this Court to reverse the defendant's prediction of a mandatory cause for a new trial, because Mr. Sims did not receive a fair trial. He argues he did not receive a fair trial in Issue 2, because the judge erroneously allowed the State, over defense objection, to introduce other chronic subjects, and also erroneously agreed with the State, over defense objection, to instruct the jury according to IPI 3.01. Mr. Sims was also denied a fair trial as argued in Issue 3, based on prosecutorial misconduct in closing the argument, and finally was denied a fair trial as argued in Issue 4, based on cumulative error, basically the error set forth in Issues 2 and 3. An argument that I would like to focus on Issue 2, involving the other crimes, evidence, and jury instruction. In the event there are any questions about Issues 3 or 4, or even Issue 1, I'd be happy to address those as well. The evidence of trial basically showed that on October 26, 2014, Mr. Sims drove an automobile, a Dodge Avenger, to his residence, that he sometimes shared with his girlfriend, Sydney Brown. That evening, the two of them became involved in an argument, and he decided to leave, but he couldn't find his car keys. The accused, Lizzie Brown, taking the keys, she denied her. Apparently, after continuing to look for the keys unsuccessfully, Mr. Sims called the police, and accused his girlfriend of having stolen his car keys. Police arrived at the scene, one of them went into the residence, after searching a bit, found the keys, brought them outside, and gave them to Mr. Sims, who then proceeded to move some of his personal belongings from the residence into the automobile. As he was doing so, his girlfriend told the police that if they looked under the front seat of the car, they'd probably find a gun. The defendant told the police, there are no guns in the car. But the police asked for permission to search, and according to one of the police officer's witnesses, the defendant gave permission, also began his search underneath the front seat of the car, didn't find anything. They continued to search, opened the front console, and inside found a .380 caliber handgun. It's that gun that formed the basis for the charge, the prosecution, the conviction in this case, and of course, this appeal. Who owned the vehicle? Who did the car belong to? The car actually belonged to Mr. Sims' wife, Crystal Sims. She testified that she periodically drove the vehicle. Her stepson, or excuse me, her son, the defendant's stepson, Kyle Wright, periodically drove the vehicle, and the defendant also periodically drove the vehicle. Prior to trial, the state announced its intention to introduce other crimes evidence, specifically evidence that on a prior date, the defendant allegedly had possessed a different weapon, a .45 caliber handgun. Is it in the same vehicle? It appears that it was at some point. The briefs say the car. It appears at some point in the same vehicle. Mr. Sims was not actually prosecuted for possession of a .45. At some point, he reported to the police that the .45 was stolen out of the vehicle that appears to be in the same car. I find that curious. He reports this .45 stolen, and he's not supposed to have a weapon anyway. That's true. Now, when he testified, he told the police that he came out, actually, with his girlfriend's residence on the morning of questions. All the doors to the automobile were open. Looking inside, saw various things missing, and he knew that the stepson sometimes drove the car, and apparently sometimes put the stepson's, in other words, the stepson sometimes put the stepson's gun in the car, so he assumed that the gun had been in the car. There was, in fact, testimony from the stepson, Tylan. The Tylan had a Ford car that the Tylan had, in fact, purchased a .45 at some point. Further, the Tylan had purchased the .380, which forms the basis for the conviction in this case. Many of the state argued to the judge that the other crimes evidence should be admitted as to issues of intent, knowledge, and absence of the state or accident. The defense objected, arguing the evidence would be irrelevant and overly prejudicial. The judge agreed with the state and allowed the jury to hear the evidence about the .45 caliber weapon. Now, the case law, in one way, strictly recognizes that, in general, other crimes evidence tends to carry a high risk of prejudice to the defendant, because it might convince the jury that the defendant is simply a bad person, a criminal, and therefore likely to have committed a charged offense. Case law also recognizes the potential danger where the evidence as to the charged offense may be close, but the jury might convict, thinking that the defendant deserves punishment because he committed a prior offense. I have a question for you. The incident with the .45, that did not result in a conviction. Is that correct? That is correct. He was never in charge of prosecuting. Even though we're calling it other crimes, it's sort of prior bad acts. I guess, technically, it would be evidence suggesting another criminal conduct, which falls under the same framework. So when the other crimes evidence or the prior bad acts with respect to the .45 came in, did it become a trial within a trial? Well, that is part of the defendant's argument. First of all, that it shouldn't come into all courts. Alternatively, that the evidence with respect to the .45 should be delivered. So, yes, that is part of the defendant's argument in this case. Now, what's interesting is that the admission of the other crimes evidence here is especially prejudicial. First of all, the other crime prior bad act, if you will, was for basically the same exact conduct as charged in this case. Unlawful possession of a weapon. The only difference is being two different weapons and two different dates. In addition, the evidence as to the charge defense here was closely balanced. First of all, this is a case of constructive possession. A .380 caliber weapon is found in the car. There was no testimony or other evidence that the defendant was ever seen in actual physical possession of the weapon. As noted previously, when Mr. Simpson's girlfriend told police they would rather hunt a gun in the car, he told police there were no guns in the car. When the police found the .380 caliber and showed it to the defendant, he identified it as being his stepson, Tylan's, car. As I mentioned previously, Crystal Sims testified that Tylan periodically drove the car, that she periodically drove the car as well. In addition, Tylan testified that he purchased the .380 caliber weapon himself and he believed that he himself had actually locked it in the car at some point in time. In addition, this handgun was sent to the crime lab. It was processed for fingerprints. No prints suitable for comparison were found. So under the circumstances here, the evidence was closely balanced. It came down to a great degree to the issues of the witness' credibility and the jury, irrational to our effect, could have found the defendant not guilty of this charge. Under these circumstances, admission of the evidence suggesting the defendant on a prior occasion possessed a different gun in the car was extremely prejudicial. In addition, that error was compounded by the judge's decision to instruct the jury pursuant to IPI 3.01. IPI 3.01 says that if the defendant is charged with committing an offense on a particular date, the state does not have the burden of establishing that it was committed on that date. The only question for the jury is did the defendant commit the offense when he committed the offense is not particularly important. The committee note to IPI 3.01 states that this instruction really should only be given where there is a variance in the evidence as to the date the offense was committed. In this case, there was no variance. The testimony is consistent that the police responded to the scene and found the gun on October 26, 2015. And I submit to your honors that generally where this instruction is given, even if there is no variance as to the date of commission, generally it probably does not cause any great prejudice. The defendant of this case is an exception because given that the evidence was close, I believe a rational prior effect could have voted to acquit the defendant of possessing the .380 in October 2015. The risk is that the jury might have misinterpreted that instruction to mean that it could find the defendant guilty based on possession, the prior alleged possession of the .485. And in fact, that is the exact argument that the defense counsel made to Judge Vespa during the jury instructions conference in trying to convince the judge not to give this instruction to the jury. If your honors would permit me, I'd like to briefly recite some of Judge Vespa's comments because I think they give the insight into the judge's thinking. And of course, as to both of these sub-issues, the introduction of other crimes evidence and the giving of the instruction, both of these rules are to be used for increased discretion. Are those comments recited in the Statement of Facts? Some of the comments are in the Statement of Facts. All of them are in the record. And I will give your honors the citation. I'm just wondering if your opponent has any objection to you. I don't. I have no objection. All right. Go ahead. Some of them are, not all of them are. They all are taken from the book. The first is page R290, 290 of the record. The judge speaking to the defense counsel said, well, what is the harm to the client if they, referring to the jury, if they find he possessed the .45 and not the .38? How are you treated by that? How is your client hurt by that? And then on the next page, R291, the judge says, I don't know why, if they find you, the defendant, guilty of possessing the .45, that there would be some failure to secure the defendant his due process rights. If they find that, yeah, he's a felon, and he did not possess the .38, but he possessed the .45 on a different date, yeah, so? So what is my response? Now, your honors might have a different interpretation. My interpretation is that the judge here is saying that if the jury returns a guilty verdict based on their finding that he possessed the .45, but they don't believe that he possessed the .38, that that guilty verdict would be legally valid. Clearly, the defendant can only be charged, excuse me, convicted of the offense with which he is charged. Thank you. And so I think that provides an insight into the judge's thinking. But even if your honors have a different interpretation, for the reasons stated, this case really presents a perfect storm because we have a close-to-the-balance case, two serious errors, interlocking errors, that the trial, Mr. Sims, would prefer trial. So for these reasons, respectfully, this Court should reverse the conviction and prevent a new trial. Alternatively, or additionally, for the reasons stated in the briefs in Issues 3 and 4, Mr. Sims, I ask your honors to grant the same rebuttal. Have you had a chance to review the jury instructions? My question is, were they modified at all to include the date or the nature of the .38 rather than .45? Well, as to the date, as soon as the jury was given the instruction, it didn't have to find it. It didn't include the date, October of whatever year. It was not modified to include that date? Well, that date is set forth in the chart of the instrument, but the jury was given an IPI of 3.01 telling the jury. Was that a modified 3.01? No, I'm sorry. I believe it was word verbatim in the IPI instructions. Same with the issues and the element instructions? It did not include language identifying the .38 as the weapon being possessed? Oh, I see what your honor is asking. I can look at the record. I have to go back and look at the instructions. Thank you, Mr. Fisherman. Have a seat. Thank you, your honor. I'm going to be presenting the court, the counsel. Your honor, I will be focusing my argument on issue two as well. If there are any other questions or any other issues, I can answer them. First, Justice Wright, thank you for giving me a chance to object. You're welcome.  Mr. Fisher didn't mean any disrespect. No, of course not. But you're welcome. And I appreciate Mr. Fisher's getting out in front of issue one and apologizing to the end of the court. I appreciate that very much. Regarding issue two, the state would submit, as we did in our brief, that no errors were committed in the handling of the other crimes evidence or IPI 3.01. You know, how does the rule of evidence in Illinois that says that even if something is relevant, it could be denied admission if it's so prejudicial, how does that play into this? Well, your honor, as I heard in my brief, unfortunately the court down below didn't conduct on the record any type of analysis finding that the probative value was not substantially outweighed by the prejudice, as it was supposed to do, as the judge was supposed to do. But as I argued in my brief, that that information, that analysis does not need to be plainly on the record. In the defendant's motion in limine, he clearly outlines what the standard of review in that, on the defendant's motion, is supposed to be considering other crimes evidence. And the trial judge clearly denied the defendant's motion in limine. So the state has to presume, I think the court has to presume that the court read that motion and was aware of what the standard was on the issue he was to review and eventually denied the defendant's motion. Therefore, the state thinks the record is sufficient to establish that the judge did find that the prejudice of admitting information regarding the 45 incident was not substantially outweighed by the probative value in this case. The judge didn't specifically say that, though. No, he did not. He didn't say anything about that. No, he did not. But again, the state submits that the record is sufficient to establish that the judge is, of course, presumed to know the law and apply it properly. We have information that the judge, again, knew the standard he was to use to review this issue and that he submitted it properly because the judges are afforded that type of presumption. How is it phrased in the defendant's motion? I don't remember the specific language, but I know it definitely does say substantially more prejudicial than probative. That was his argument. I think it was probably a passing. I don't think the defendant made a big point of it. No, no, I think it was a passing. Yeah, I understand that, Judge. He just said it was prejudicial. Did I get it? Really, the defendant just sort of in passing said it was prejudicial. Well, I think he does use the substantially more prejudicial than probative language. I'm almost positive that was sufficient. Otherwise, I don't know if we would have had a liking to stand on that particular fact. But given that the state is presuming that the judge knew the law quite appropriately, that his decision to admit the other crimes evidence and permit the state to admit it was proper, the state assumes it's clearly relevant evidence in this case to establish the absence of a mistake. The 45 incident was remarkably similar to the 38 incidents involving the same vehicle, a gun owned by the same individual. It just establishes that the defendant was no stranger to possessing Title I rights firearms in a defendant's vehicle. Did the state cite it? Yes, yes. The defendant's wife's vehicle, who the defendant seems to drive a fair amount of the time. The defendant just drove that vehicle to McDonald's just prior to the fight between him and Ms. Brown that triggered the police coming over. So it's clearly the most recent drive of the 48. The state cited in our brief the 1983 Supreme Court case of People v. Barthol talking about the probative value of such evidence and that when the factual similarities of a prior event and a current event are increased, so is the probative value and the relevance. Again, because these incidents are so similar that the probative value increases and the similarity really helps establish knowledge of the absence of a mistake in this case. And that supports the trial judge's decision to make that evidence. Well, regarding the IP Act 3.01, the state first notes that this issue was forfeited. The defense did not object to that instruction and so this court should uphold that forfeiture. But again, moving on to the substance of the issue, the state says this is a proper instruction and the jury was informed very clearly about what the law was and they were able to support the giving of that instruction and that closing argument and rebuttal of both the prosecutor and defense counsel focused almost exclusively on the 380 and the evidence that pertains to that charge and not to the 45. The evidence, of course, by and large focused on 38, the offense that was charged in the charging instrument. The state submits a record and shows that the defense was not confused or misled by the state by mentioning this 45 evidence. The charging instrument discussed the particular date the 38 was found. The evidence pertained almost exclusively to the 38 and so were the closing arguments and rebuttal. So there was no confusion or misleading of the defendant. The defendant knew what he was charged with. The jury knew that the state was required to prove the 38. The comments by the trial judge that Mr. Fisher alluded to during his argument, those were not in front of the jury. So the jury was not tainted by the trial court's belief of what the jury could do with the evidence of the 45. The jury was always important in this case. It was clear that it needed to find that the defendant possessed the 38 and not the 45. And for that reason and the reasons in my argument previously, the state submits that the IPI 3.01 was properly given and that the other crimes evidence, the other incident evidence regarding the 45 was also properly given. Did I read in your brief that the 45 was not mentioned in the closing argument of the state?  If it was mentioned, it was not stressed in any way, shape or form. I don't exactly remember what my brief says on that specific point. Because if it wasn't mentioned during oral arguments by the state, that goes to whether the defendant was prejudiced or the jury was confused by the instruction. But if it wasn't mentioned in closing argument, then perhaps it wasn't as relevant. I understand your logic on that, Justice Wright. The state believes it is relevant. I feel very strongly about that argument in my brief. Whether or not the prosecutor bid into closing argument, I don't know, didn't feel like, maybe just felt like focusing on the evidence that pertained to the charge at hand and kind of abandoned that argument. I don't know why the prosecutor made that decision. I appreciate that. I would still argue that it's pretty relevant evidence. And I know I'm asking you questions about a brief that you wrote months ago. I still should probably have known definitively whether or not that was mentioned. But I know for a fact that it was not a strong theme of the prosecutor's closing argument. If there are any other questions, that's the end of it. It was my opinion. If there are any other questions, we'll be happy to answer them. Thank you, Mr. Nicholas. Mr. Fisher. Thank you, Your Honor. Just briefly, first of all, in response to Your Honor, Justice Wright's question concerning the state closing argument. Was it your brief? I don't recall how much was discussed in the brief, but I believe it will be that counsel for the prosecution did talk about the 45 in closing argument. Now, I want to make one thing clear. I did mention before that when the state asked to be allowed to introduce the other crimes evidence, counsel for the state argued it was relevant for certain purposes. It established the defendant's intended knowledge, absence of a state, or accident. And there was a limiting instruction given to the jury. So, I believe the prosecutor did talk about the 45 in closing argument. Thank you for clarifying. Now, I do, she might have talked about it in terms of its limited purposes. I mean, my recollection is she did further in the jury to talk about it. He possessed the 45, and so that means he possessed the 38. And of course, Your Honor, I have the transcript, and we'll no doubt review it in progress. Assuming decision in this case, also with respect to the 45, counsel stated that the defendant is not misled with respect to the introduction of the other crimes evidence. And the defendant's not making an argument necessarily that he was surprised or misled, although certainly given counsel's attempt to keep that evidence from coming in, counsel may well believe, prior to the trial, that such evidence would come in. But the defendant is not arguing that the prejudice is that he was surprised, but rather its impact on the jury in its decision in this case, especially considering the closeness of the evidence as to whether or not the defendant constructively possessed the 38 in October 2015. And then finally, counsel said that the objection to the instruction is forfeited, but it was no objection. Maybe counsel misspoke a bit. Defense counsel most definitely did object to that instruction during the jury instructions conference, and that objection preceded the judge's comments that I recited to Your Honors earlier. What defense counsel failed to do is he did not, in his post-trial motion, make an argument about jury instruction. He certainly did raise an issue in the post-trial motion that his client was denied a fair trial based on the erroneous admission of the other crimes evidence. He did not say anything in the post-trial motion about jury instruction, although he very definitely and forcefully argued at the time of the jury instructions conference that that instruction should not be given because of the danger that the jury might be misled and might convict based on the 45, not based on the 38. Unless Your Honors have further questions. I just want to save face. Mr. Nicolosi, page 13 of your brief talks about counsel did not even mention the incident involving the 45. But I'll look at the closing arguments to see whose recollection is best. I hope I'm right. That's fine. That's fine. Again, I thank Your Honors for your time. I just want to reiterate that because the evidence was closed here, these errors were denied a fair trial. We can't be sure that the jury convicted based on the finding that he constructively possessed the 38 in October 2015. For these reasons, and again, it's received respectfully, I'd ask Your Honors to reverse it on the panel, for the trial for these reasons and more of the additional reasons, supporting issues three and four of the briefs. Thank you, Mr. Fisher. Thank you. Thank you both for your arguments today. Reverse this matter under advisement. Get back to the written disposition within a short day.